IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

RUTH HERRERA,

       Plaintiff,

v.                                                  CIV 02-1513 KBM

JO ANNE B. BARNHART,
Commissioner of Social Security,

       Defendant.

## MEMORANDUM OPINION AND ORDER

      Plaintiff Ruth Herrera has a high school education and later took basic computer courses. She worked for seventeen years at a Marriot hotel, primarily in an administrative assistant and secretarial capacity for the maintenance department. She has suffered from Meniere's syndrome for a number of years, which resulted in surgery and subsequent full loss of hearing in her right ear and later problems with her left ear. Herrera applied for benefits on June 8, 2001, alleging onset of disability as of that date, asserting that due to worsening hearing, she was having increasing difficulty performing tasks at work (such as answering the telephones, taking messages, understanding directions, and placing orders). Thus, at age thirty-seven, she had decided to quit working and to apply for disability benefits although she worked approximately another month or so. In her request for hearing and reconsideration materials, Herrera asserted that the Meniere's syndrome was causing dizzy spells, fainting, and vomiting. *See e.g., Administrative Record* ("*Record*") at 28-32, 56, 62, 72, 90, 93-94, 99, 103, 109-10, 130-35, 162, 227.

      Administrative Law Judge ("ALJ") William F. Nail, Jr. found that Plaintiff has the residual

functional capacity to perform sedentary work with certain limitations and, with the aid of the testimony from a vocational expert, identified two such jobs she can perform – mail sorter and surveillance system monitor.  The ALJ therefore denied benefits at Step 5.  The Appeals Council declined review on November 2, 2002, thereby rendering the ALJ's decision final.  *See id.* at 4, 12-20.

This matter is before the Court on Plaintiff's motion to reverse or remand.  *Doc. 11.* Pursuant to 28 U.S.C. § 636(c) and FED. R. CIV. P. 73(b), the parties have consented to have me serve as the presiding judge and enter final judgment.  If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands and Plaintiff is not entitled to relief.  *E.g., Hamilton v. Sec'y of Health & Human Servs.,* 961 F.2d 1495, 1497-1500 (10th Cir. 1992).  My assessment is based on a review of the entire record, where I can neither reweigh the evidence nor substitute my judgment for that of the agency.  *E.g., Casias v. Sec'y of Health & Human Servs.,* 933 F.2d 799, 800 (10th Cir. 1991).  Plaintiff raises three claims in her motion to reverse or remand.  I have carefully considered the entire record and find that the error alleged at Step 3 is dispositive of remand.  Accordingly, I need not address the other issues.

At Step 3, the ALJ concluded:  "Although there is ***no specific listing section for Meniere's disease,*** I find that the claimant's condition does not meet or equal any of the criteria set forth in Listing Sections 11.02 and 11.03."  *Doc. 12* at 3 (emphasis added; quoting *Administrative Record* at 14).  Those Listings that were considered by the ALJ pertain to epileptic seizures, however.  Plaintiff maintains that the ALJ erred by failing to "consider and discuss Listing 2.07, which relates ***specifically*** to Meniere's syndrome."  *Doc. 12* at 3 (emphasis

added).  That Listing provides in full:

> 2.07  Disturbance of labryninthine-vestibular function (including Meniere's disease), characterized by a history of frequent attacks of balance disturbance, tinnitus, and progressive loss of hearing.  With both A and B:
>
> > A.  Disturbed function of vestibular labyrinthine demonstrated by caloric or other vestibular tests; and
>
> > B.  Hearing loss established by audiometry.

20 C.F.R. § 404, Subpart P, App. 1, Section 2.07.

Indeed, there is no dispute that Listing 2.07 does specifically apply to Meniere's disease, and Defendant concedes the ALJ did not consider that Listing.  *See Doc. 13* at 4.  Nevertheless, Defendant argues that remand is not warranted for two reasons.  First, the medical evidence does not establish that Herrera suffers from "frequent" attacks of balance disturbance.  Second, there exists no documentation of "caloric or other vestibular tests" that demonstrate "disturbed function of vestibular labyrinthine."  *See id.* at 5.  I am not persuaded by either argument.

The Step 3 inquiry is to be made on the basis of medical evidence only.  *See* 20 C.F.R. §§ 404.1526(b)(, 416.926(b); *see also Ellison v. Sullivan,* 929 F.2d 534, 536 (10th Cir. 1990).  A website description of Meniere's disease is among the medical records.  The article explains that

> [a] typical attack of Meniere's disease may be preceded by fullness or aching in one or both ears.  Hearing fluctuation or tinnitus (ringing or sounds in the ears) may also precede an attack.  A Meniere's episode generally involves severe vertigo (spinning), imbalance, nausea, and vomiting.  The average attacks lasts two to four hours.  After a severe attack, most people find that they are extremely exhausted and must sleep for several hours.
>
> In some people, Meniere's episodes may occur in clusters; that is, several attacks may occur within a short time.  In other cases,

3

>    weeks, months, or even years may pass between episodes.
>    Between the acute attacks, most people are free of symptoms or
>    note only mild imbalance and tinnitus.

*Record* at 156.

I reject Defendant's first argument for two reasons. First, the epilepsy Listings which the ALJ applied specifically define the frequency of attacks required. They require that convulsive seizures occur more frequently than once a month and nonconvulsive seizures occur more frequently than once a week. *See* 20 C.F.R. § 404, Subpart P, App. 1, § 11.02 ("Epilepsy -- convulsive), § 11.03 ("Epilepsy -- nonconvulsive"). ALJ Nail concluded that Plaintiff suffers from dizzy spells at most once a month and therefore did not meet the epilepsy Listings. Listing 2.07, in contrast, does not specifically define the word "frequent" as it pertains to the symptoms associated with Meniere's disease. Even assuming ALJ Nail's conclusion that the attacks occurred once a week at most was supported by substantial evidence, that finding does not conclusively resolve whether that frequency satisfies Listing 2.07. The construction of the term "frequency" under Listing 2.07 is an issue for the Administration to resolve in the first instance.

I also reject Defendant's first argument because it appears from the record that Plaintiff was developing increasingly more frequent dizzy spells and, as to the frequency of attacks, ALJ Nail did not consider all of the medical evidence before him. He did accurately note that a June 2001 report by one of Plaintiff's physicians "revealed that the claimant was only having about one spell per month," citing "Exhibit 4-F, p. 38." *Record* at 14; *see also id.* at 184, 208 (report of Dr. David Liu noting that "[s]he is having about a spell per month and losing hearing the left ear as well. . . . moderately severe sensorineural hearing loss in the left."). He also accurately observed that in October 2001, another physician reported only "occasional episodes of true vertigo," citing

4

"Exhibit 2-F, p. 2." *Id.; see also id.* at 149 (report of Dr. Karl. L. Horn noting that Plaintiff "complains of disequilibrium and occasional episodes of true vertigo. The episodes, when they occur, last for approximately one hour.").

However, ALJ Nail also states that Plaintiff "has complained of dizziness two times per week, citing "Exhibit 11-F, p. 19." *Id.* The last "Exhibit" in the record is either a "10" or an "11," but sequentially the exhibits only go up to number 10. If the ALJ's citations to Exhibit 11 actually refer to Exhibit 10, page 19 does not appear to be a medical record. Instead, it is a page from a pre-printed form entitled "pre-hearing notes." It is likewise unclear whether the ALJ, Plaintiff's non-attorney advisor, or someone else wrote these notes. Even if page 19 is considered as a medical record, ALJ Nail ignored other notations that speak to frequency of the attacks. For example, while page 19 lists dizziness twice a week, it also mentions that the accompanying vomiting lasts "hours [to] 2 days. *Id.* at 254.

Perhaps ALJ Nail simply made the observation about Plaintiff's allegations of frequency to discredit them with in comparison to the 2001 medical records showing a frequency estimate of once a month to occasionally. However, the above-cited description of Meniere's disease indicates that the frequency of the attacks can fluctuate. When viewed in their entirety, Plaintiff's medical records do show periods of fluctuation and severity. For example, when she was experiencing attacks in 1985, Plaintiff's doctors performed surgery on her right ear. *See id.* at 223. In 1994, she began having hearing problems in her left ear, but without accompanying dizziness. *See id.* at 219. In 1998, she experienced "episodic vertigo." *Id.* at 151. On two occasions in 2000, she had severe sustained attacks with "almost daily spells" lasting for two months in the Spring, and a period of dizziness, nausea and vomiting for two weeks in the Fall.

5

*See id.* at 190, 192.

Plaintiff's application materials and testimony indicate that her spells were becoming more frequent. On her daily activities form for example, Plaintiff alleges that she suffers dizzy spells "***almost every day.*** The room spins [and] I cannot walk, move or lift my head. I have no balance & must immediately lay down. I get nauses (sic) and sometimes throw up." *Id.* at 118 (emphasis added). Herrera testified, for example, that she has had the spells for a long time, she can never tell when one will be triggered, and the spells are debilitating and can last anywhere from an hour to a week. *Id.* at 31-32, 44. The treating physician who five months earlier reported only "occasional episodes," wrote a report to Disability Vocational Rehabilitation Services on March 5, 2002 advising it that Plaintiff now "continues to have episodic vertigo ***on a daily basis***. These episodes ***can last for several hours.*** . . . I have ordered and ENG ***for her persistent dizziness.*** I will see her in follow-up after this study has been obtained." *Id.* at 235 (emphasis added).

There is no indication that ALJ Nail considered the 2000 medical records of prolonged episodes or the 2002 letter from Dr. Horn indicating that he was going to order tests for Herrera's complaints of persistent dizziness. Yet, those medical records are relevant to the issue of frequency. If he did consider the evidence, ALJ Nail did not indicate why he rejected it.[1] Thus, I cannot conclude that the ALJ's finding concerning frequency of attacks is supported by substantial evidence or that his finding eliminates the possibility that Plaintiff is disabled under

---

[1] ALJ Nail left the record open for thirty days for the non-attorney representative to submit additional evidence. *See id.* at 25. The index to the record indicates that the doctor's 2002 letter was among the materials received after the hearing along with other exhibits. *See id.* at 3 (Exhibits 8F, 9F, and 10F received subsequent to hearing and encompass pages 233 to 268 of the Record); *id.* at 235 (3/2/02 letter). Since ALJ Nail referred to "Exhibit 11" in his opinion, I presume the materials were timely submitted and that he included them in his review. *See id.* at 49 ("ALJ: You're going to get me some additional documents, right? . . . All right. I'll close the record and wait for those documents.")

Listing 2.07.

I also reject Defendant's second argument that I should find Plaintiff does not meet Listing 2.07 because there is no documentation of "caloric or other vestibular tests" that demonstrate "disturbed function of vestibular labyrinthine." True, Plaintiff does not point to any such records. A decision from the Northern District of Illinois, however, rejected an identical argument, and I find that reasoning sound:

> the court cannot discern [from the Record] whether [Plaintiff's doctors] performed the proper "caloric or other vestibular tests" necessary to determine whether there is "disturbed function of vestibular labyrinth." Moreover, the ALJ is the person ultimately responsible for making medical determinations and in this case he did not make a medical determination in connection with [Listing 2.07].

*Gavalick v. Sullivan,* 1991 WL 18171 at *3 (N.D. Ill. 1991). If the medical evidence does not contain the tests necessary to evaluate Listing 2.07, the Administration will need to consider whether to conduct a consultative examination. *E.g.,* 20 C.F.R. § 404.1517.

Finally, even if Plaintiff does not meet the Listing, both she and her family provided testimony that Plaintiff's dizzy spells required her to miss work or be taken from work on occasions. Dizzy spells are nonexertional impairments that should have been included in the hypothetical to the vocational expert, but were not. *See Record* at 46; *see also Williams v. Bowen,* 844 F.2d 748, 752 (10th Cir. 1988) ("Nonexertional limitations may include or stem from . . . dizziness").

Wherefore,

**IT IS HEREBY ORDERED** that Plaintiff's motion *(Doc. 11)* is GRANTED, and the matter is remanded to the Commissioner for further proceedings. A final order will enter

7

concurrently herewith.

_____
UNITED STATES MAGISTRATE JUDGE
Presiding by consent.